Judge Ukderwood
delivered the opinion of the Court.
The Breckenridge county court admitted to record, as fully proved, a paper, purporting to be the last will and testament of Thomas Pate, deceased. The instrument bears date, October 7,1803. The following facts were established by the proof in this court; for an appeal was taken from the decision of the county court, and the question whether it be proper to establish the instrument, as the last will and testament of said Pate, recurs here.
Thomas Pate being domiciliated in Breckenridge county, and where a large portion of his property was at the time of his death, visited Virginia, where he had resided, for the purpose of closing his business in that state. On his return to Kentucky, he was taken si«k on the road, and died in Virginia. *114 He joined William Compton and his family, on' the road, and travelled with them, and being too unwell to ride on horseback, got into Compton’s wagon, and was carried on in it; Compton and family moving to Kentucky. Pate complained of being very unwell, and on the night the will was written, to use the language ot the witness, was in “a great rack of misery.” Duriug that evening, he expressed a wish to get to a house, where he might write, or have a will written. At night a room was procured, and according to the statement of Wm. Compton, his brother, Elias E. Compton, and the testator, were engaged in the room, said Elias, writing a will for said Pate.
The instrument produced, as the will of said Pate, is in the hand writing of said Elias, who is now dead. The signature of Thomas Pate, is proved to be in the hand writing of said Elias. The instrument is attested by the names of Wm. Compton, Elias E. Compton an’d- Polly Compton, as subscribing witnesses. Polly Compton’s name, as a witness, is in the hand writing of her husband, Wm. Compton; Wm. Compton stated, that he had no recollection of signing his name to the instrument as a witness, nor had he any recollection, that it was acknowledged before him, by Thomas Pate, nor had he any recollection, of seeing his brother Elias, write the name of Thomas Pate, nor did he recollect,'that said Pate gave any directions tosaid Elias, to sign his, Pate’s name, to the paper. William Compton stated, his habit was, never to witness any instrument, without seeing the party. who executed it, make his signature, or hearing him acknowledge the instrument, to be his act and deed, and from his habit, he supposed Pate acknowledged the instrument in question, in his presence, otherwise, he would not have attested it, but under what circumstances he placed his name to the paper, as a subscribing witness, he now had no recollection. He stated his wife’s name, was in his hand writing, and that he had no recollection of the circumstances, under which he had put her name to the paper, but he would not have done so, without her consent, and he had sometimes signed her name, as he believed, to papers as a witness.
*115 • Polly-Compton stated, that she could write her name, but the signature of her name was not hers, and that she had no recollection whatever, of any circum* stance attending the execution of the instrument, cr-that Thomas Pate spoke of having a will written, or that any other spoke of it, although she recollected his riding in her husband’s wagon, being sick, and that he was left on the road. She did not recollect that she had ever authorized her-husband to sign her-name as a witness upon any occasion, nor did she recollect to have heard the will of Pate, spoken of for many years after her arrival in Kentucky.
The signature of Elias E. Compton as a witness, was proved to be in his hand writing. What became of the will after it was executed, and how it was disposed of, was not clearly shewn by proof. It was produced many years-after the death of the testator, by his son, Benjamin Pate, whose administrators are now contesting its validity, said Benjamin having been called on to produce it by a bill in chancery. It is most probable, that Wmu Compton brought the will with him to Breckenridge county, where he settled, and delivered it to Benjamin Pate, whom he found in that county, although said Compton’s recollection wag not distinct and clear on the subject. -
Benjamin Páte in his answer to. the bill, requir, ing him to produce the will of his father Thomas Pate, Says, that “he is informed,.a few days before the death of his father, that he executed a writing purporting to be his last will and testament,” but from whom said Benjamin derived his information that bis 'father had executed, such writing, is not'stated'. The instrument before us, is that .which he produced, pur-; porting to be. the last, will and-testament of his father.
Upon the foregoing -facts,the only- question- which presents.itself, is, do.they constitute the instrument ■ exhibited, the will and testament, of Thomas Pate, executed in conformity to the requisites -of the law2 The competency' of Thomas Pate, to. make, a will, seemed to be doubted by. counsel. • If he had not a disposing,, sound mind, it was the result of hisextreme pain. The evidence in respect to any imputed alienation of mind, is too weak to raise a question upon it^ *116 and leaves but one in the cause, which is already-stated.
That testator’s name was signed by his directions, and that witnesses subscribed their names in his presence, may be established by circumstantial evidence. Subscribing witness not recollecting his attestation, but recognizing his handwriting, and declaring that it was his practice never to attest, without hearing acknowledgement of parties, is evidence to be left to jury, as to execution of deed, or m/1. Froofofhand-writing of subscribing witnesses, all of whom are dead, sufficient to authorize presumption, that they signed in presence of testator.
The statute of wills, requires that a “last will and testament, should be signed by the testator or testatrix, or by some other person, in his or her presence, and by his or her directions, and moreover, if not wholly written, by himself or herself, be attested by-two or more competent witnesses subscribing their names in his or her presence.” There is no positive proof, that the testator’s name in the present case, was signed by his directions, or that the witnesses, Wm. and Elias Compton, attested the will by subscribing their names in the presence of the testator. Can the want of such proof be supplied by secondary or presumptive evidence? We think it may be. “If the subscribing witness, cannot recollect his attestation, but recognizes his hand writing, and declares it was his practice, never to attest, without hearing the acknow-ledgement of the parties, this is evidence tobe left to the jury,as to the execution of the deed.’’ Allen, &c. vs. Trimble, &c. V. Bibb, 21. We perceive no reason, why the same doctrine, should not apply likewise to wills. In the case of Croft vs. Pawlet, II. Strange, .1109, proof of hand writing oí the subscribing wit-nessess, to a will, all of whom were dead, was admit, ted as sufficient to authorize thepresumption, that the witnesses, signed in the presence of the testator, although that was not stated in the customary preface to to their signing. Jackson vs. Vanduson, V. Johnson, 141, is a case, where a will was sustained upon proof of the hand writing of the witnesses,the testator making'his mark. The cases of Turner vs. Turner, I. Lit. 101, and G winn vs. Radford, II. Litt. 137, are corroborating authorities. Applying the doctriues of these cases, to the fact, that the genuineness of the signatures of Wm. and Eiias Compton, is well established as subscribing witnesses,it results, thatthe conclusion is well warranted, that the will was executed in due form of law. And that is our opinion.
There are other circumstances which we will not comment on, which strengthen our conviction of the propriety of this conclusion. They will strike the reflecting mind, in perusing the facts already detailed, *117 when we add, that the will liberated a part, if Hot all the testator’s slaves, at certain ages. We would therefore sustain the decision of the county court, if lands had been embraced in the will. Much mpre when none are.
Hardin, for appellant; Mills and Brown, for ap-pellee.
R. A. Buckner, produced his Commission, as judge of the Court of Appeals, on the 30th instant and took his seat.
A preliminary question was made, denying the ability of Joe, whose freedom is secured by the will, to sustain this suit, as a defendant, in this court, upon the ground, that it is not shewn, that he has attained that age, at which the will grants his freedom. The objection comes too late here. The proceeding is against Joe, by Benjamin Pate’s administrators. They have brought him before us, and if they have brought here an individual, incapable of sustaining a suit, because he is a slave, it is their fault. If that were true, we would not reverse the decision of the county court, upon the application of the appellants, when there is no one before us, capable of litigating with them. Besides, they initiated the proceedings in the county court, and their writ of error,is to get clear of the consequences of their own conduct, in which we will not help them. If we were to refuse to take cognizance of the cause for want of proper parties, the effect would be, that the order of the county court, could not be changed by us.
The order of the county court is affirmed with costs.